Hon. PIERRE ADOLPHE ROST,
Hon. ISAAC T. PRESTON. } *Associate Justices.*

---

THE STATE *v.* LUCKY N. PRICE, et al.

The admissions of the dying declarations of the deceased, in evidence, in prosecutions for homicide, is not inconsistent with the statute giving the accused the right of meeting the witnesses face to face. The rule of evidence by which such declarations are established under the common law, has not been changed by the statute.

The right of the accused to receive a copy of the indictment, and a list of the persons who are to pass on his trial, is one created in his interest and for his benefit, and he is competent to waive it.

APPEAL from the District Court of Natchitoches. *Jones,* J. *James Welsh,* district attorney, for the State. *John B. Smith,* for appellant. The judgment of the court was pronounced by

EUSTIS, C. J. We have, on consideration, come to the conclusion, that the questions of law presented by the counsel for the prisoners, were correctly decided by the district court.

We do not understand that the admission of the dying declarations of the deceased in evidence. conflicts with the provision of the Constitution, which gives the accused the right of meeting his witnesses face to face. The rule of evidence, under which the declarations were received, has been established under the common law, in cases of homicide, and has been adopted in our courts ever since their organization.

Nor do we think that the court erred in granting a speedy trial to the prisoners, which they had a right to claim, under the 107th article of the Constitution, unless sufficient legal grounds were presented to authorize a postponement of the trial.

---

*Hon. THOMAS SLIDELL, J. was not present during this term.

We think the right of the prisoner to receive a copy of the indictment, and of the list of persons who are to pass on his trial, is one created in his interest and for his benefit, and that it was competent for him to waive it.

The other grounds for setting aside the verdict are, perhaps, determined by the decision of the court, as to the right of the prisoners to be tried as asked by them. At all events, they are not before us in a form in which we can notice them.

The judgment of the district court is therefore affirmed, with costs.

PRESTON, J. The prisoners were indicted, tried and convicted, in the parish of Natchitoches, of the murder of *Eli Kay.* Being sentenced to imprisonment for life, they have appealed to this court.

The indictment was found by the grand jury, on the 9th of June, 1851. The prisoners claimed an immediate trial, probably in consequence of the court being about to adjourn, and their unwillingness that the cause should be continued until the ensuing term, the offence charged not being bailable. Whereupon, the following proceedings took place, on the 10th of June, 1851, and are made a matter of record :

"And now, on this day, came the district attorney, who still prosecutes in the name of the State of Louisiana, and *Lucky N. Price,* the prisoner, in proper person, who claimed to be now put upon his trial, before the court here, for the matters charged in the indictment exhibited against him, when the district attorney gave the court to understand and be informed, that two entire days had not yet elapsed since a copy of the indictment, and list of the jury which are to pass on his trial, had been delivered to him. Whereupon the court stated to said prisoner, that the law accords to him the privilege and the right to have, before his trial, a copy of the indictment and list of the jury which are to pass on his trial, delivered to him at least two entire days before he shall be tried, and that until such delivery shall be regularly made, the court will not direct him to be put upon his trial. Whereupon, the prisoner, after conference with his counsel learned in the law, declared to the court that he was fully advised of the rights and privileges accorded by law, in this behalf, but that it was his wish and intention to renounce, and that he. does hereby renounce, every and all such rights and privileges, and he now here puts himself on his trial. The court then declared, and admonished the prisoner, that if such rights and privileges were renounced, he would not again be heard in this behalf, either on motion for a new trial in arrest of judgment or otherwise. Whereupon, the prisoner declared that he was well content, and that he persisted in being put forthwith upon his trial : and the district attorney consenting thereto, there came a jury, and he was tried. The same proceedings took place with regard to the other prisoner, *Morris Johnson.*

The prisoners urge, as a ground for reversing the judgment against them, that in a trial for a capital offence, they could not renounce their legal right to be served with a copy of the indictment and list of the jury that were to pass upon their trial, two entire days before their trial, and that their consent to waive the privilege was not binding upon them.

In the case of the State against *Hornsby,* it was held by the late court of errors and appeals, in criminal cases, that, in a trial for a capital offence, the consent of the accused to the separation of the jury, after being sworn, was invalid. 8 R. R. 558. In the case of the State against *Desmond et al.,* we yielded with reluctance to this decision, and cannot, therefore, extend the principle to cases which it does not necessarily embrace. 5th Ann. 398.

In the progress of a criminal trial, there are forms of law prescribed purely for the benefit of the accused. He has the right to plead not guilty, but may waive it, and plead guilty. Of this class, is the right and privilege to a copy of his indictment and list of his jury, for two entire days before his trial.

These are entirely different from forms which are prescribed for the public good. The prisoner must be prosecuted by indictment, in a capital case, and not otherwise. He must be arraigned publicly, and cannot waive it by pleading privately. He must appear in person on the trial, even if bailed, and not by attorney. For the certainty which should attend criminal prosecutions, for the public example, and the happy effects of an open acquittal or conviction, these forms cannot be dispensed with. They are unlike those in which the public have no interest, which are purely personal to the prisoner, and which, therefore, in our opinion, can be waived with his consent.

The accused were, moreover, entitled to a speedy trial by a jury of the vicinage. If circumstances might delay this trial for a term, they might well waive part of the time allowed by law for the examination of the qualifications of the jury, for the immediate enjoyment of the greater constitutional right to a speedy trial. They did so, after being properly counselled and wisely admonished by the judge, of the consequences in case of their conviction, and we think, therefore, have no legal cause of complaint.

It is further urged, as a ground for granting a new trial, that some of the jurymen who tried the prisoners, were not members of the original panel, as appears by the record. This may have resulted from the necessity of summoning talismen, in consequence of exhausting the panel. From whatever cause it occurred, it is not a ground for reversing the judgment. The jurors were not challenged as they came to the book, and were, therefore formally accepted by the prisoners, as good and lawful jurors. The point now raised, was argued elaborately, and with great ability, in the case of the *State* v. *Dubord*, and decided against the accused. We adhere to the decision. 2d Ann. 732.

On the trial of the case, the district attorney offered many witnesses to prove the dying declarations of the deceased, *Eli Kay*, to the introduction of which testimony, the counsel of the prisoners objected, on the ground, that under article 107 of the Constitution of the State of Louisiana, they had a right to be confronted with the witnesses, and that the declarations of *Kay*, made in their absence, and without cross-examination could not be received in evidence. The testimony to prove the declarations was admitted in evidence, the declarations having been made in *extremis*, *Kay* knowing the fact that he could not survive, and expressing himself to that effect at the time he made them.

Declarations made when the party is at the point of death, and when every hope of this world is gone; when every motive to falsehood is silenced, and the mind is induced, by the most powerful considerations, to speak the truth, have ever been admitted in evidence, in England and the United States. A situation so awful, is considered by the law, as creating an obligation equal to that which is imposed by a solemn oath in a court of justice.

When the dying victim ceases to exist, he is no longer a witness, and cannot be confronted with the accused; but his dying declarations remain as evidence, and the accused is only entitled to be confronted with the witnesses to those declarations. The right of the accused to meet the witnesses against him, face to face, existed in England, but this was the reasonable view taken of it as to dying declarations. So, in many of the States of the Union, the principle has been expressly engrafted into their Constitutions as to criminal trials. And yet

dying declarations have always been admitted in evidence in those States. So, in our own State, the Constitution of 1812 contained the same constitutional right, expressed in the same words found in the present Constitution. And yet, it was never considered as having abolished this important species of evidence. On the contrary, it has always been regarded as a Constitutional declaration of a great common law right, and to have the full effects of the common law principle, but no more.

Acquiescence in the opinion, for forty years, that the constitutional right does not exclude the proof of dying declarations, renders it impossible to reverse the opinion at this late period.